IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDWARD SPANGLER and | : | CIVIL ACTION |
| DONNA JACONI, | : | NO. 10-3434 |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA, | : | |
| DANIEL CASTRO, and | : | |
| JACK FEINMAN, | : | |
| | : | |
| Defendants. | : | |


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                          MAY 21, 2012


TABLE OF CONTENTS

I.   INTRODUCTION.............................................. 2
II.  BACKGROUND................................................ 3
     A.   Lieutenant Edward Spangler........................... 3
     B.   Police Officer Donna Jaconi.......................... 7
III. PROCEDURAL HISTORY....................................... 13
IV.  LEGAL STANDARD........................................... 15
V.   DISCUSSION............................................... 17
     A.   Spangler's Claims of Unlawful Retaliation........... 17
          1.   Protected Activity............................. 19
               a. Spangler's opposition to perceived
               discrimination against Baker................... 20
               b. Spangler's opposition to perceived
               discrimination against Jaconi.................. 22
               c. Spangler's participation in investigations . 23
          2.   Adverse Action................................. 24
          3.   Causal Connection.............................. 28

B.  Jaconi's Claims of Unlawful Discrimination and Retaliation.................................................. 30

    1.  Race and Sex Discrimination.................... 30

        a. Time-off requests ......................... 32

        b. Moving conference table, office furniture, and boxes......................................... 32

        c. Overtime pay for training ................. 33

        d. Signing off duty early ................... 34

        e. Emergency vacation request ................ 34

        f. Internal affairs investigation ............ 35

        g. Allegations against Feinman ............... 36

        h. Remaining allegations ..................... 37

    2.  Retaliation................................... 38

C.  Claims Against City................................. 40

VI.  JUDGMENT INDEPENDENT OF THE MOTION...................... 41

VII. CONCLUSION.............................................. 41

## I.   INTRODUCTION

Edward Spangler and Donna Jaconi (collectively, "Plaintiffs"), former and current employees, respectively, of the Philadelphia Police Department ("PPD"), bring this employment-discrimination action against Captain Daniel Castro, Lieutenant Jack Feinman, and the City of Philadelphia ("the City"). The City and Feinman move for summary judgment in their favor on all counts. For the reasons that follow, the Court will grant the Motion.

## II.   BACKGROUND

Spangler and Jaconi allege unlawful discrimination under separate, but related, circumstances. The facts relating to each are stated as follows.[1]

### A.   Lieutenant Edward Spangler

Spangler is a white male. Am. Compl. ¶ 8, ECF No. 6. PPD employed Spangler from 1987 to March 4, 2009. Spangler Dep. 9:16-18, 12:21-22, Aug. 18, 2011. Spangler joined PPD's Crime Scene Unit ("CSU") as the commanding officer in February, 2006. Id. at 28:14-29:20.

In March, 2007, Spangler refused to add negative comments to a performance evaluation for Sergeant Patricia Baker. Supervisors in the PPD conduct annual evaluations of their direct subordinates. Id. at 33:20-22. As her direct supervisor, Spangler prepared Baker's report, which he then submitted to Castro. Id. at 33:23-34:03. Spangler gave Baker satisfactory marks in all areas but also indicated some areas where she needed improvement. Id. Castro disagreed with Spangler's review and instructed Spangler to change the report to indicate her performance was unsatisfactory in certain areas with an overall unsatisfactory performance report. Id. at 34:5-

---

[1]     The Court views the facts in the light most favorable to Plaintiffs and draws all reasonable inferences in Plaintiffs' favor.

9. Castro represented to Spangler that Baker had submitted untimely suspense date reports and had failed to submit reports on other occasions. Id. at 37:6-8.

Spangler told Castro that "everyone" misses a suspense date "at one time or another" and Castro cannot "pick on one person and say she missed them, if we don't document everybody else that's missed them also." Id. at 38:3-13. Castro replied, "I don't care. I want it changed." Id. at 38:14-15. Spangler also opposed Castro's modification because he did not provide documentation of the missed reports. Id. at 38:16-17. Despite Castro's order, Spangler did not modify the evaluation and ultimately signed an unmodified performance evaluation in the presence of a Fraternal Order of Police ("FOP") representative.[2] Id. at 37:9-38:17, 43:22. Thus, Spangler bypassed PPD's chain of command. Id. at 44:1-45:4.

Spangler described an event where Castro was upset with Spangler regarding Castro's administrative aide. The police chief removed Castro's administrative aide from a mandatory summertime street duty list after confirming with Spangler by telephone that the aide suffered from a certain medical condition. Id. at 103:24-104:21. Spangler was not involved in

---

[2]     Spangler understood that captains routinely modified a subordinate's performance reviews, and, prior to this incident, Castro ordered Spangler to modify other performance reviews. Spangler Dep. 42:11-21, 47:5-48:22.

4

preparing the list of officers for summertime street duty. Id.
at 103:11-12. Nevertheless, when the list came out, Castro
called Spangler at home on his day off upset that his aide was
off of the list in contradiction to his orders and that Spangler
took the chief's telephone call without speaking to Castro
first. Id. at 104:18-21. And in another instance, Castro
"hollered" at Spangler because, while Spangler was on leave for
training, an investigator became ill and took two days of leave,
leaving the department short-staffed. Id. at 55:1-23.

In May, 2007, Castro increased Spangler's work from
about two or three reports per week to almost daily reports. Id.
at 68:8-11, 12-14. Furthermore, after Spangler's shift changed
to the ten o'clock to six o'clock shift, Castro sometimes
assigned a report at three or four o'clock to be due the next
day, which caused Spangler to work late and "affected [his]
family life." Id. at 68:12-22. Despite this change, Spangler
received overtime whenever he worked extra hours, he was
generally granted extensions to complete his work, and he was
not disciplined for not abiding by the report's set timeline.
Id. at 68:23-25, 72:9-22.

On another occasion, Castro assigned a report at
eleven o'clock to be complete by two o'clock. Id. at 96:7-13. In
that period, Spangler had to contact about twenty-nine
individuals for information to complete the report. Id. at 97:3-

5

5. Although Spangler testified he did not complete the report in time, he requested an extension and ultimately completed the report. Id. at 97:6-11. He was not disciplined. Id. at 97:12-14.

Castro changed Spangler's shift, which caused Spangler to lose two hours of overtime per week. Id. at 54:1-8. As explained above, Spangler received overtime for other work he completed without penalty. On April 13, 2007, Spangler submitted a memorandum requesting four hours of vacation leave to attend a function for his wife. Id. at 79:13-80:14. Castro, within his discretion, denied the request due to a staffing shortage. Id. at 80:17-82:17. And in another instance, Castro changed Spangler's schedule, which lasted for one week, after the Fraternal Order of Police learned of the change. Id. at 110:1-8. Spangler was placed back on the dayshift. Id.

In July, 2007, Castro called Spangler complaining that Baker failed to respond to a homicide of a fourteen-year-old on a bicycle and ordered Spangler to reprimand her. Id. at 127:7-11. Spangler responded that the sergeants do not respond to every homicide. Id. at 127:12-16. There is no evidence of record that Spangler opposed Castro's order or experienced formal discipline regarding the incident.

In August, 2007, Spangler was transferred out of CSU for making an inappropriate comment to an intern. Id. at 131:13-21. On June 24, 2006, Spangler sent the intern a text message

inviting her to a "naked swim party." Notice 1 (Aug. 30, 2007),
Mot. for Summ. J. Ex. 5. Spangler received a five-day suspension
and was transferred from his CSU assignment. Id.

Spangler stopped actively working for the PPD in
September, 2008, and "ran" his leave until March 4, 2009. Id. at
12:19-22, 145:2-13. In September, 2008, Spangler started working
as the chief of police for Drexel University. Id. at 14:8-9,
145:4-14.


B.  Police Officer Donna Jaconi

Jaconi is a white female. Am. Compl. ¶ 9. Since 1990,
the PPD employed her as a police officer. Id. ¶ 15. In 1996, the
PPD transferred her to the CSU, where she continues to work.
Jaconi Dep. 9:20-25, Aug. 18, 2011.

On August 13, 2005, Jaconi witnessed an event
involving Castro and his daughter. Id. at 19:1-28:3. While
Jaconi was off duty at a Rite Aid pharmacy, she witnessed a
young girl run into the store screaming for help. Id. at 20:14-
21:6. Castro eventually entered the store behind the girl, who
was his daughter, in a rage. Id. at 22:6-9. Jaconi attempted to
calm Castro down, who pushed by her and attempted to grab his
daughter by the hair. Id. at 22:11-24, 28:17-24. Jaconi
testified that Castro was "grabbing her and trying to hit her."
Id. at 23:2-4. On-duty officers arrived; Jaconi gave a statement

and left her information as a witness in the report. Id. at 25:4-26:17. Jaconi testified that she filed a report through internal affairs.[3] Id. at 29:1-15.

Later, in October, 2005, Lieutenant Jack Feinman[4] informed Jaconi that Castro would become her commanding officer. Id. at 31:1-4. Feinman asked whether Jaconi wished to stay with the CSU. Id. at 31:4-5. Jaconi indicated that she would stay and that, up to that point, she had a cordial relationship with Castro. Id. at 31:6-12, 32:17-22.

From October, 2005, to January, 2006, although Jaconi would have liked Castro to apologize for his actions on August

---

[3]     Notably, Plaintiffs did not attach the alleged report in response to the Motion for Summary Judgment. Defendants do not have a record that Jaconi participated in an internal affairs investigation regarding the August 13, 2005, incident. See Seidler Aff. ¶¶ 4-5.

[4]     Feinman served as a lieutenant and commanding officer of the CSU from November, 2002, until January, 3, 2006, when he went on sick leave for about one month. Feinman Dep. 5:21-6:2, 32:21-33:13, Aug. 18, 2011. Thereafter, he transferred out of the unit because he had "professional and personal differences" with Castro. Id. at 11:3-11:16. Feinman professionally disapproved of Castro's changes to the CSU, specifically his attempt to reduce CSU operating costs. Id. at 11:10-13, 12:23-13:3. And Feinman personally disapproved of the way Castro treated him and his subordinates. Id. at 11:14-16. Specifically, Castro wanted Feinman to "kiss his ass" and Feinman refused. Id. at 12:2-7. Feinman testified that Castro had a "God complex" and was "ego-driven," but was "uniform" with regard to his treatment of employees based on their race and sex. Id. at 33:23-34:11. Spangler replaced Feinman as commanding officer of the CSU in February, 2006. Spangler Dep. 11:7-22.

13, Jaconi's only complaint against Castro was that he was "curt" with her. <u>Id.</u> at 52:8-17.

On January 6, 2006, Castro ordered Jaconi to move some office furniture and boxes, and on March 27, 2006, Castro ordered Jaconi and a male civilian to move a wood conference table into the conference room.[5] <u>Id.</u> at 43:2-44:24, 66:17-22. The conference table was about eight feet by five feet and weighed, according to Jaconi, about 150 pounds. <u>Id.</u> at 45:6-7, 48:23-24. When Jaconi and the male civilian were moving the conference table, the table fell on her foot, causing an injury that put her on inactive duty for seven days. <u>Id.</u> at 65:3-7, 67:15-19. During that period, she worked from a desk. <u>Id.</u> at 67:20-24.

On March 10, 2006, Castro instructed Spangler to send a memorandum to CSU supervisors to ask the night shift officers to volunteer to attend three days of training as part of their regular tour of duty and not to take overtime for the training sessions. <u>Id.</u> at 55:18-24, 57:15-19, 58:9-13. Jaconi asked a FOP representative whether Castro's request was consistent with the collective bargaining contract. <u>Id.</u> at 56:24-57:7. An FOP

---

[5]     Although at first unclear about the dates on which Castro ordered her to move boxes and office furniture and a conference table, Jaconi later testified, consistent with the dates alleged in the Complaint, that Castro ordered her to move office furniture and boxes on January 6, 2006, and ordered her to move a conference table on March 27, 2006. Jaconi Dep. 66:3-16; Am. Compl. ¶ 19(b), (e).

representative called Castro regarding the issue. Id. at 57:4-
10. Jaconi heard Castro refer to Jaconi as a "troublemaker." Id.
at 56:13-15.

On March 22, 2006, Castro ordered Jaconi's supervisor
to dock her two vacation hours after a lieutenant said she left
her shift early. Id. at 64:11-13. The penalty was apparently
caused by Jaconi's delay in returning from court duty, not
because she left early. Id. at 62:3-63:24. When the mistake was
resolved, Jaconi received her two vacation hours back. Id. at
64:17-20.

On October 22, 2006, Jaconi called her supervisor to
take a vacation day. Jaconi Dep. 68:14-17. Because a supervisor
was not on shift, she notified another officer but did not call
anyone up the chain of command, as required by internal policy.
Id. at 70:4-25; Philadelphia Police Department Directive 56
(1992), Mot. for Summ. J. Ex. 7.

On November 7, 2006, Jaconi requested time off on the
day of Thanksgiving. Id. at 39:6-21. Three CSU technicians would
be available, which, she believed, was sufficient manpower. Id.
at 39:22-40:7. Spangler denied the request and provided,
"minimum manpower; should be four technicians." Id. at 41:15-17,

42:2-15. Jaconi believes Castro suddenly changed the requirement from three to four technicians.[6]

On May 7, 2007, members of a different police squad ignored Jaconi after Castro allegedly informed them that Jaconi was responsible for an internal affairs investigation. Id. at 91:11-24. Specifically, certain members would not talk to her or help her. Id. at 91:23-24. There is no evidence of record of this investigation or, apart from Jaconi's testimony and bare allegations, that Castro told other officers that Jaconi was responsible for the investigation.

On April 18, 2007, Jaconi received formal discipline for refusal to obey orders and using profane language. Id. at 14:7-18; Statement of Charges 1-2 (Apr. 18, 2007), Mot. for Summ. J. Ex. 14. On December 17, 2006, Jaconi and other CSU employees attended a class on blood splatter and fingerprints. Statement of Charges 1. A superior officer observed her reading the newspaper during class. Id. During a break, the superior officer ordered her to put the paper away. Id. Jaconi responded, "Where do you want me to put it, up my ass?" Id. at 2. Jaconi continued to read the paper during class. Id. at 1.

---

[6]     Jaconi testified, "Well, [three technicians] was the requirement then. And apparently . . . all of a sudden it changed through Captain Castro of course, who gave it to Lieutenant Spangler who was, you know, trickled down to do his work for him. Then Sergeant Baker said to me, well, Captain Castro decided to change it; now it's four." Id. at 41:20-42:1.

On May 25, 2007, Jaconi removed CSU displays for use during a presentation the next day without the permission of Castro or Spangler. Spangler testified that he informed Castro he was unaware of Jaconi's actions even though officers generally ask him for permission before using the materials for presentations. Spangler Dep. 98:5-12. Castro told Spangler he did not trust Jaconi, did not want her to take the displays, and referred to her as a "bitch"; he ordered Spangler to direct Jaconi to return the displays. Id. at 98:13-16. In response, Spangler stated, "Guys do it all the time. We have guys that take the stuff out all the time out of the unit and do presentations." Id. at 98:17-20. Castro replied, "I don't care. I don't want her doing it." Id. at 98:20-21. There is no evidence of record that Jaconi received discipline for removing the displays without permission.

On May 26, 2007, Castro ordered Spangler to check whether Jaconi was in court as scheduled because he did not trust Jaconi. Id. at 100:5-9. Spangler responded that he would not check "one person," but would instead "check on everybody in court." Id. at 100:10-14. Castro replied that he did not care what Spangler did so long as he checked on Jaconi. Id. at 100:15-16. Spangler followed Castro's order and checked whether Jaconi was in court. Id. at 100:22-25. Jaconi was not in court.

12

<u>Id.</u> at 100:22-23. There is no evidence of record that Jaconi received discipline for this incident.


## III. PROCEDURAL HISTORY

On September 9, 2010, Plaintiffs filed an Amended Complaint that asserts the following four counts. In Counts I and II, respectively, Spangler asserts violations of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Pennsylvania Human Relations Act ("PHRA") against the City and Castro. In Counts III and IV, respectively, Jaconi asserts violations of Title VII and the PHRA against all three defendants. Am. Compl. ¶¶ 29-72. The City, Castro, and Feinman answered. Answer to Am. Compl. 1, ECF No. 7.

On November 15, 2010, the Court held an initial pretrial conference and stayed the case until February 14, 2011, because Castro was a defendant in a pending criminal action. Order 1, Nov. 16, 2010, ECF No. 13.

On February 16, 2011, the Court held another pretrial conference and issued a Scheduling Order. That Scheduling Order and a subsequent scheduling order both provided, "As discussed with the parties, Defendant-Castro should not be deposed without

leave of the Court."[7] Scheduling Order 2 n.2, Feb. 17, 2011, ECF No. 15; Second Scheduling Order 1 n.1, July 8, 2011, ECF No. 18.

On September 2, 2011, counsel for all three defendants, Shant H. Zakarian, Esquire, who is engaged by the City Solicitor's Office for the City of Philadelphia, moved to withdraw as counsel for Castro. Counselor Zakarian represented that, despite numerous attempts to contact Castro regarding the representation, Castro failed to respond. Mot. to Withdraw ¶¶ 5-6, ECF No. 19. The Court granted the motion to withdraw. Order 1, Sept. 9, 2011, ECF No. 20. Castro is currently unrepresented in this civil action and the unrelated, pending criminal matter is on appeal.

On October 21, 2011, the City and Feinman moved for summary judgment against Plaintiffs on all claims.[8] Mot. for

---

[7] At an initial pretrial conference with counsel for the parties, counsel for Plaintiffs represented that Castro was indicted. First IPTC Tr. 3:12-17, Nov. 15, 2010, ECF No. 27. The Court stayed the case for ninety days. Id. at 5:25-6:3. At a subsequent initial pretrial conference, counsel for Plaintiffs represented that Castro was recharged, which postponed his trial. Second IPTC Tr. 3:11-14, Feb. 16, 2011, ECF No. 29. Counsel for Defendants wished to move forward with the case. Id. at 4:10-16 ("Your Honor, we are ready at this point to move forward. [Castro] has been indicted, but he is innocent until proven guilty, and he is available to testify."). Specifically, defense counsel did not object to depositions not touching on the matters for which Castro was indicted. Id. at 4:25-5:4. The Court, accordingly, moved forward with the case with the exception that "the deposition of Mr. Castro should not be taken without leave of Court." Id. at 6:2-5.

Summ. J. 1, ECF No. 23. Plaintiffs' responded. Pls.' Resp. 1, ECF No. 26. The matter is ripe for disposition.[9]

## IV.   LEGAL STANDARD

Summary judgment is appropriate if there are no genuine disputes of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)). A fact is "material" if proof of its existence or nonexistence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

---

[8]      Although the issues raised in the motion heavily involve Castro's conduct, Castro is not a party to the Motion for Summary Judgment. For ease of reference, the term, "Defendants," as used herein, refers only to the City of Philadelphia and Jack Feinman.

[9]      The Court has federal-question jurisdiction over Plaintiffs' Title VII claims, see 28 U.S.C. § 1331 (2006), and supplemental jurisdiction over the related PHRA claims, see id. § 1367(a).

The Court will view the facts in the light most favorable to the nonmoving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth. of N.Y. & N.J., 593 F.3d 265, 268 (3d Cir. 2010). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the nonmoving party, who must "set forth specific facts showing that there is a genuine issue for trial."[10] Anderson, 477 U.S. at 250.

---

[10]     Before disposing of the issues raised in the Motion, an issue raised throughout Plaintiffs' response deserves attention. Plaintiffs assert the following:

> Castro while represented and during Discovery did not engaged [sic] in good faith discovery effort; to the contrary, Castro took a deliberate course of action to evade the discovery process and neither he or his counsel informed the Plaintiffs and their counsel of the "difficulties["] between Castro and counsel, so that the "difficulties" could be brought to the court's attention and resolved during Discovery. As such, the Defendants and particularly Castro have failed utterly to fulfill their Discovery obligation.

Pls.' Resp. 17; see also id. at 31, 33, 40 (asserting that Castro did not appear for deposition).

On September 2, 2011, Counselor Zakarian notified the Court and the parties that he could not contact Castro when he moved to withdraw as counsel for Castro. The Court granted the motion on September 9, 2011. Order 1, Sept. 9, 2011, ECF No. 20. Plaintiffs never moved for leave to take Castro's deposition or to compel Castro's deposition. The discovery period did not close until October 13, 2011, which provided Plaintiffs ample time to take either measure. Furthermore, Plaintiffs have not shown by affidavit or declaration that, for specified reasons,

**V.    DISCUSSION**

Spangler asserts claims of unlawful retaliation against the City and Castro. Jaconi asserts claims of unlawful discrimination and unlawful retaliation against the City, Feinman, and Castro. And throughout the Amended Complaint, Plaintiffs allege the City has a policy or custom of unlawful discrimination. First, Spangler fails to establish a prima facie case of unlawful retaliation. Second, Jaconi fails to establish a prima facie case of unlawful discrimination and unlawful retaliation. Third, to the extent the Amended Complaint asserts claims for municipal liability against the City for an unlawful policy or custom, Plaintiffs fail to substantiate the claim. Therefore, the Court will grant the Motion.

A.    Spangler's Claims of Unlawful Retaliation

Spangler claims Defendants violated his right to be free from retaliation for opposing sex discrimination in

---

they cannot now present facts essential to justify their claims. See Fed. R. Civ. P. 56(d). Plaintiffs may not now complain that they are without sufficient evidence to defend the motion due to their own oversight. See Dowling v. City of Phila., 855 F.2d 136, 140-41 (3d Cir. 1988).

And relatedly, Plaintiffs' counsel demonstrated a lack of care and attention to the matter at hand as shown by numerous typographical errors in their written submissions to the Court, citations to pages of deposition testimony that were not made evidence of record, mischaracterizations of deposition testimony, and reliance on allegedly certain "undisputed" facts that, in fact, lacked any evidentiary support.

violation of Title VII and the PHRA.[11] Title VII prohibits employers from discriminating against individuals with respect to "compensation, terms, conditions, or privileges of employment" based on "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1) (2006). Furthermore, Title VII's antiretaliation provision prohibits employers from discriminating against "any individual . . . because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." Id. § 2000e-3(a).

To establish a prima facie case of unlawful retaliation under Title VII, an individual must provide evidence to show (1) he engaged in protected activity; (2) Defendants took an adverse employment action against him; and (3) a causal connection between his participation in the protected activity and the adverse employment action.[12] E.g., Moore v. City of

---

[11]     The Court analyzes Title VII and PHRA claims brought under theories of discrimination and retaliation under the same legal standard. See, e.g., Wilkerson v. New Media Tech. Charter Sch. Inc., 522 F.3d 315, 318-19 (3d Cir. 2008).

[12]     Upon establishing a prima facie case, the burden shifts, under the now-familiar McDonnell Douglas framework, to the defendant employer to advance a legitimate, non-retaliatory reason for its conduct. Moore, 461 F.3d at 342. If the employer successfully advances such a reason, the burden finally shifts to the plaintiff to prove the proffered explanation is false and a pretext for discrimination. Id. "To survive a motion for

<u>Philadelphia</u>, 461 F.3d 331, 340-41 (3d Cir. 2006). For the following reasons, Spangler fails to establish a prima facie case of retaliation.

      1.   <u>Protected Activity</u>

Defendants contend Spangler did not engage in an activity protected by Title VII. For purposes of a retaliation claim, an individual engages in a protected activity either by "opposing" discrimination made unlawful by Title VII or by "participating" in certain Title VII proceedings. <u>Slagle v. Cnty. of Clarion</u>, 435 F.3d 262, 266-67 (3d Cir. 2006). In either case, "the employee must hold an objectively reasonable belief, in good faith, that the activity they [sic] oppose is unlawful under Title VII." <u>Moore</u>, 461 F.3d at 341. Protected activity may be in the form of

> informal protests of discriminatory employment practices, including making complaints to management, writing critical letters to customers, protesting against discrimination by industry or society in general, and expressing support for co-workers who have filed formal charges.

<u>Curay-Cramer v. Ursuline Acad. of Wilmington</u>, 450 F.3d 130, 135 (3d Cir. 2006) (internal quotation marks removed). The Court

---

summary judgment in the employer's favor, a plaintiff must produce some evidence from which a jury could reasonably reach these conclusions." <u>Id.</u>

"look[s] to the message being conveyed rather than the means of conveyance." Id.

Spangler alleges he engaged in the following protected activities: he opposed perceived discrimination against Baker and Jaconi and participated in investigations into unlawful discrimination. Am. Compl. ¶¶ 26, 31. Defendants argue there is no evidence of record to support these allegations and, therefore, they are entitled to judgment as a matter of law.

     a.    Spangler's opposition to perceived
              discrimination against Baker

First, Spangler's testimony belies his allegation that he opposed perceived discrimination against Baker. Spangler contends that he opposed perceived discrimination when he disobeyed Castro's order to modify Baker's performance evaluation. The evidence of record does not indicate that Castro ordered Spangler to modify the evaluation because of Baker's race or sex. And Spangler understood that it was within Castro's authority to modify performance evaluations. Furthermore, Spangler testified that he believed Castro "did not like [Baker]" because Castro "didn't think she was a good supervisor." Id. at 35:4-14. And Spangler testified he opposed the change because of the lack of documentation for Castro's request. Id. at 39:1-3. Thus, Spangler's testimony demonstrates he opposed Castro's order, not because of perceived unlawful

discrimination, but because Castro failed to provide proper
documentation.

Spangler's attempts to raise a genuine dispute of
material fact fail. First, Spangler asserts he testified that he
opposed Castro's instruction because he believed Castro was
discriminating against female employees. Spangler
mischaracterizes his deposition testimony. In fact, as discussed
above, Spangler testified that he believed Castro did not think
Baker was a good supervisor and that he opposed Castro's order
because Castro did not provide documentation.

Next, Spangler asserts that Castro responded that he
"did not care" when Spangler informed Castro that he could not
treat females in the department differently than males. Spangler
again mischaracterizes his deposition testimony. Indeed, as
explained above, Castro responded that he "did not care" about
Spangler's concern of picking out one person for the failure to
submit suspense reports when everyone in the department missed a
report at one time or another. Castro did not comment that he
"did not care" in response to a charge of unlawful
discrimination.

Finally, Spangler asserts that he opposed Castro's
order barring female sergeants from giving overtime and that he
protested Castro's unlawful discrimination up the chain of
command. Spangler's assertions are not supported by the evidence

21

of record.[13] Therefore, there is not a genuine dispute of material fact regarding whether Plaintiff engaged in protected activity, and Defendants are entitled to judgment as a matter of law.

### b.   Spangler's opposition to perceived discrimination against Jaconi

Spangler alleges he opposed Castro's orders because of perceived discrimination against Jaconi in two instances. With respect to both events, Spangler's testimony does not indicate he perceived unlawful discrimination or, much less, that Spangler opposed Castro's orders.

First, Spangler asserts that on May 25, 2007, Spangler opposed Castro's order directing Spangler to stop Jaconi from removing crime scene displays used for school presentations. Spangler's testimony does not raise a genuine dispute that he engaged in protected activity by opposing Castro's order. First, Spangler's colloquial use of "guys" does not indicate that he meant "males" typically use the crime scene displays for presentations. Thus, Spangler's testimony does not indicate he

---

[13]     Defendants demonstrated they are entitled to judgment as a matter of law. Plaintiffs' burden is to raise a genuine dispute of material fact. Plaintiffs, however, fail to submit evidence indicating Spangler protested any alleged discriminatory treatment up the chain of command. And the evidence submitted by Defendants, on which Plaintiffs entirely rely, does not support this allegation.

acted because he perceived unlawful discrimination. Furthermore, even if Spangler perceived unlawful discrimination, he did not oppose Castro's order. In fact, he followed Castro's order and testified that he did not believe it was "unlawful," only illegitimate. Id. at 99:1-6.

Second, Plaintiffs assert that on May 26, 2007, Spangler opposed Castro's order to "court check" Jaconi. Spangler noted that he would check on everyone that should be in court, not just Jaconi. Spangler's testimony does not indicate that he believed Castro singled out Jaconi because of her race or sex. In any event, Spangler complied with Castro's order. And Jaconi was not in court as scheduled. Therefore, Spangler did not oppose perceived discrimination against Jaconi.

c.    Spangler's participation in investigations

Finally, there is no evidence of record to support Spangler's allegation that, on August 7, 2007, he participated in certain investigations regarding unlawful discrimination. There is no evidence of record that Spangler was a favorable witness for an EEOC charge filed by Jaconi. And there is no evidence, except for Spangler's bald assertion, that he

participated in an internal investigation of Castro's alleged
race and sex discrimination.[14]

Spangler contends Defendants admitted that Spangler
participated in these investigations in their Answer to the
Amended Complaint. See Pls.' Resp. 8. This is incorrect. In
fact, Defendants denied the facts alleged in paragraphs twenty-
six and thirty-one, which refer to the alleged investigations.
See Answer to Am. Compl. ¶¶ 26, 31. Plaintiffs failed to proffer
any evidence supporting these allegations, and the Court will
not now speculate as to their veracity.

Therefore, Defendants are entitled to judgment as a
matter of law as to Spangler's claim that he suffered unlawful
retaliation because he failed to establish he engaged in
protected activity.


2.  Adverse Action

And even if Spangler engaged in protected activity, he
did not suffer a materially adverse action. With respect to the
second element of a prima facie retaliation claim, Title VII's
antiretaliation provision "is not limited to discriminatory
actions that affect the terms and conditions of employment."

---

[14]     As explained above, Plaintiffs failed to substantiate
other allegations of internal investigations, despite their
ultimate burden in proving the allegations of employment-
discrimination made in the Amended Complaint. See supra note 3.

24

Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 64
(2006). Rather, "a plaintiff must show that a reasonable
employee would have found the challenged action materially
adverse, which in this context means it well might have
dissuaded a reasonable worker from making or supporting a charge
of discrimination." Id. at 68 (internal quotation marks
removed). "Material" adversity distinguishes "significant from
trivial harms." Id. "An employee's decision to report
discriminatory behavior cannot immunize that employee from those
petty slights or minor annoyances that often take place at work
and that all employees experience." Id. A "reasonable employee"
indicates an objective standard that "avoids the uncertainties
and unfair discrepancies that can plague a judicial effort to
determine a plaintiff's unusual subjective feelings." Id. at 68-
69. Finally, the court determines each retaliation claim with
respect to the "particular circumstances" of the case. Id. at
69; see also Thompson v. N. Am. Stainless, L.P., 131 S. Ct. 863,
868 (2011) ("Given the broad statutory text and the variety of
workplace contexts in which retaliation may occur, Title VII's
antiretaliation provision is simply not reducible to a
comprehensive set of clear rules.").

Spangler alleges he suffered the following adverse
actions: (1) that he was reprimanded; (2) that his work
increased; (3) that he was denied vacation time and overtime;

and (4) that his shift changed.[15] Pls.' Resp. 26; Am. Compl. ¶ 32. Spangler asserts that those actions were materially adverse because they disrupted his life and made it difficult to pick up his son from school. Id. Spangler fails to establish a prima facie case that he engaged in protected activity. And even if Spangler engaged in protected activity, Spangler's allegations that he suffered a materially adverse action are not supported by the evidence of record.

First, there is no evidence of record that Castro formally disciplined Spangler. In fact, Defendants provide three performance reports issued by Castro that praise Spangler for his effective leadership.[16] See Mot. for Summ. J. Ex. 8. Spangler described instances where Castro verbally reprimanded him and "hollered" at him for leaving the CSU short-staffed. Under the circumstances of this case, Castro's telephone call to Spangler and verbal reprimand are not adverse actions. Castro acted in response to perceived insubordination and mistakes made by

---

[15]     Spangler alleged he was transferred after he engaged in the alleged protected activity. See Am. Compl. ¶ 27. In his response to the Motion for Summary Judgment, Spangler abandons the claim that his transfer was an adverse action.

[16]     In an April 11, 2007, report, Castro also noted his concern in the increase in delinquent reports that "[a] small fraction of [Spangler's] personnel are responsible for" and recommended that Spangler take "necessary action . . . to reduce the number of backlogs." Id. Castro asked Spangler to "take proven steps to reduce chronic unnecessary court related overtime." Id.

Spangler in circumstances that would not have dissuaded a reasonable worker from making or supporting a charge of discrimination. <u>See</u> <u>White</u>, 548 U.S. at 68.

Second, Spangler alleges that Castro increased his workload in retaliation for the alleged protected activity. Spangler's own testimony indicates that, while his work assignments had strict deadlines, he was granted extensions and able to complete his assignments without discipline. That he sometimes worked overtime to complete his work may be a "petty slight" or "minor annoyance," but it does not rise to the level of an adverse action. <u>See</u> <u>Burlington N.</u>, 548 U.S. at 68.

Third, Spangler alleges Castro denied him vacation time and overtime. Specifically, Spangler alleges Castro denied him four hours of vacation time on April 13, 2007. Am. Compl. ¶ 24(c). Spangler acknowledged he had no right to overtime. He lost two hours of overtime when Castro changed his shift. And Castro denied him four hours of vacation leave because of a staffing shortage.[17] Spangler's temporary "loss" of two hours of overtime per week and four hours of vacation time may have

---

[17]     Notably, Spangler testified that, although he believed Castro denied his request because, in his opinion, Spangler refused to "go after" people of certain genders and races, Spangler could not provide any specific evidence supporting his belief. Spangler Dep. 93:5-25.

created a minor annoyance but does not rise to the level of a materially adverse action.

Fourth, Spangler alleges that Castro changed his shift without Spangler's request in violation of the PPD's collective bargaining agreement. Pursuant to that agreement, management may manage the operations of the department and direct the workforce. <u>See</u> Contract Between the City of Philadelphia and Fraternal Order of Police Philadelphia Lodge No. 5, at 48, Mot. for Summ. J. Ex. 4. The one-week change in Spangler's shift does not rise to the level of a materially adverse action. Therefore, with respect to all of the claims that Spangler suffered a materially adverse action, Defendants are entitled to judgment as a matter of law.

### 3. Causal Connection

Spangler fails to establish the first two elements of a prima facie case. And even if he did, Spangler fails to establish a causal connection between his alleged protected activity and materially adverse action. To establish the third element of a prima facie retaliation claim, "a plaintiff must show a causal connection between the plaintiff's opposition to, or participation in proceedings against, unlawful discrimination and an action that might have dissuaded a reasonable worker from making or supporting a charge of discrimination." <u>Moore</u>, 461

F.3d at 342. "This third element identifies what harassment, if
any, a reasonable jury could link to a retaliatory animus." Id.
(internal quotation marks removed). Spangler failed to carry his
burden to show he engaged in protected activity and suffered a
materially adverse action. Similarly, Spangler fails to raise a
genuine dispute of material fact regarding any causal connection
between the two.

Spangler's beliefs, unsupported by the evidence of
record, that Castro treated him differently because he allegedly
opposed unlawful discrimination is insufficient to withstand a
motion for summary judgment, especially in light of the evidence
presented that Castro acted for legitimate nondiscriminatory
reasons.[18] And even if Spangler participated in Jaconi's EEOC
complaint and investigation for Baker, Spangler alleged that
participation on August 7, 2007. Am. Compl. ¶ 26. The only
adverse action Spangler allegedly suffered after that date is
his transfer, which, as explained above, Spangler abandoned.[19]
See supra note 15.

_____

[18]     While the Court notes that the evidence of record
supports a finding that Castro acted pursuant to legitimate,
nondiscriminatory reasons, the Court does not reach this part of
the McDonnell Douglas analysis because Defendants demonstrated
they are entitled to judgment as a matter of law and Spangler
failed to demonstrate a genuine dispute of material fact with
regard to his prima facie case.

[19]     Furthermore, the evidence of record does not support a
causal connection between the alleged protected activity and

Therefore, because Defendants are entitled to judgment as a matter of law with respect to Spangler's claims of retaliation and Spangler failed to point to or present evidence to raise any genuine dispute of material fact, the Court will grant the Motion with respect to Spangler's Title VII and PHRA claims.

B.   <u>Jaconi's Claims of Unlawful Discrimination and Retaliation</u>

Jaconi claims Defendants violated her right to be free from race and sex discrimination and from retaliation for opposing unlawful discrimination in violation of Title VII and the PHRA. Jaconi fails to establish a prima facie case of discrimination and retaliation against Defendants.

1.   <u>Race and Sex Discrimination</u>

Jaconi claims Defendants discriminated against her because of her race and sex in violation of Title VII.[20] Title

---

Spangler's transfer. Castro was not part of the decision to terminate Spangler. And the documentary evidence relating to Spangler's termination establishes that he was transferred for making an inappropriate comment to an intern.

[20]     In the Complaint, it is not expressly clear whether Jaconi asserts a claim of race and sex discrimination under a theory of disparate treatment, disparate impact, or hostile work environment. Jaconi at least alleges Defendants treated her differently based on her race and sex. Am. Compl. ¶ 51. Defendants addressed all three theories. In any event, Jaconi's response to the Motion for Summary Judgment makes clear that

VII prohibits employers from discriminating against "any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1) (2006). To establish a prima facie case of discrimination, Jaconi must show (1) she was a member of a protected class; (2) she was qualified; (3) she was subject to an adverse employment action; and (4) the adverse employment action occurred under circumstances that raise an inference of discriminatory action. See Sarullo v. U.S. Postal Serv., 352 F.3d 789, 797 (3d Cir. 2003). The Court determines whether Jaconi established a prima facie case of unlawful discrimination as a matter of law.[21] See id. Assuming Jaconi is a member of a protected class and qualified for her position, she fails to establish that she suffered an adverse employment action and to raise an inference of discriminatory action.

---

Jaconi's claim proceeds on the basis of disparate treatment. Pls.' Resp. 30-37.

[21]      Upon establishing a prima facie case, the burden of production shifts under the familiar McDonnell Douglas framework to Defendants to articulate a legitimate, nondiscriminatory reason for taking adverse action. See Sarullo, 352 F.3d at 797. The ultimate burden, however, rests with Jaconi to show the proffered reason is pretext. See id.

a.      Time-off requests

Jaconi alleges Castro discriminated against her by denying a vacation request. Am. Compl. ¶ 19(a), (g). The evidence of record does not support this allegation. Spangler denied her request because of minimum manpower requirements, and there is no evidence that Castro influenced or ordered this decision for discriminatory reasons. Jaconi's subjective belief that Castro changed the manpower requirements out of discriminatory animus is not supported by the evidence of record and, alone, is insufficient to raise a genuine dispute of material fact.

b.      Moving conference table, office furniture, and boxes

Jaconi alleges Castro discriminated against her by ordering her to move a wood conference table, a desk, and boxes. Am. Compl. ¶ 19(b), (e). Jaconi's allegations lack record support. Jaconi carries approximately fifty pounds of equipment each day. Id. at 48:18-22. Although the evidence of record does not corroborate this belief, Jaconi testified that she believed Castro ordered her to help move the table to embarrass her in front of others or to hurt her. Id. at 46:7-8, 54:2-8. She further testified that Castro lacked "commonsense" by ordering her to move the table rather than ordering two male individuals to move the table. Id. at 54:9-16. She did not receive any

discipline or reprimand surrounding either event. Id. at 67:25-68:3. Jaconi's subjective belief that Castro acted with discriminatory animus is insufficient to raise a genuine dispute of material fact.

        c.    <u>Overtime pay for training</u>

        Jaconi alleges that she opposed Castro's request to complete certain training without taking overtime because she would be the only female not to receive overtime and "[a]ll male officers were to receive overtime pay for training sessions." Am. Compl. ¶ 19(c). The evidence of record, specifically, Jaconi's own testimony, does not support this allegation. Castro's request that night shift officers volunteer to attend training without taking overtime does not indicate Castro acted with discriminatory animus. Jaconi did not testify that the request targeted women, that she objected because she was the only female not to receive overtime, or that all male officers would receive overtime.[22]

_____

[22]    Jaconi testified that Castro, in his office, called her a "bitch" and a "dyke." Jaconi Dep. 60:9-10. Jaconi did not testify whether Castro make these remarks before or after the request. Furthermore, Castro's request was sent through Spangler to CSU supervisors in general, and, according to the evidence of record, in no way singled out Jaconi. The request and Jaconi's opposition to it, had nothing to do with Jaconi's race or sex.

d.    Signing off duty early

Jaconi alleges Castro penalized her two vacation hours for signing off duty early when he did not penalize male officers for signing off duty early. Am. Compl. ¶ 19(d). Again, the evidence of record does not support Jaconi's allegation. There is no evidence of record that Castro treated Jaconi any differently or acted based on her race or sex. Furthermore, there is no evidence of record that Castro would not penalize male officers if he believed they signed off duty early. Finally, after Jaconi explained that she was delayed in returning from court duty, not because she left early, she received her vacation hours back.

e.    Emergency vacation request

Jaconi alleges Castro discriminated against her by reprimanding her when she did not notify Castro that she would take an "emergency vacation day." Am. Compl. ¶ 19(f). She further alleged that Castro reprimanded her for not calling him directly. Id. Jaconi has not provided any evidence of record, but for her subjective belief, that Castro's actions were motivated by unlawful discrimination. Jaconi has provided no evidence, but for her own bare allegations, that Castro treats male officers differently. And the evidence of record indicates that Castro's reprimand was because of Jaconi's violation of

34

department protocol, with which she admittedly was not familiar.[23] Jaconi Dep. 70:6-8.

### f.    Internal affairs investigation

Jaconi alleges that Castro told others in the CSU that she was responsible for an internal affairs investigation and that her coworkers have since "ostracized her and caused her extreme emotional distress." Am. Compl. ¶ 9(n). There is no evidence of record, but for Jaconi's deposition testimony, supporting the allegation that Castro told Jaconi's coworkers she was responsible for the investigation. And during her deposition, Jaconi testified that her coworkers "were all just not talking to me." Jaconi Dep. 91:11-14. Jaconi has not shown Castro discriminated against Jaconi on the basis of her race or sex.

---

[23]    In fact, Defendants submitted evidence showing Jaconi had other issues with regard to taking leave. See Memorandum from Spangler to Jaconi 1 (Dec. 15, 2006), Mot. for Summ. J. Ex. 2 (warning Jaconi that further undocumented sick occurrences will result in Jaconi being placed on "Excessive Use of Sick Leave List"); Memorandum from Spangler to Jaconi 1 (Dec. 28, 2006) (issuing violation of internal directive when sick checks conducted at Jaconi's residence after Jaconi took sick leave revealed she was not at home as required by directive). Jaconi refused to sign the memoranda.

g.     Allegations against Feinman

Jaconi alleges that Feinman was aware of Castro's disparate treatment of Jaconi but failed to take action. Am. Compl. ¶ 19(q). This allegation, too, is without support by the evidence of record. Feinman went on sick leave for one month in January, 2006, and transferred out of the CSU in February, 2006. Therefore, he did not witness any discriminatory acts that allegedly took place in 2006 and 2007. Id. at 33:13-16. Thus, the only allegation that Feinman could conceivably have had an opportunity to address was the November, 2005, denial of Jaconi's vacation request. As was shown above, there is no evidence to support the allegation that Castro denied Jaconi's request based on unlawful discrimination. Therefore, there is no reason why Feinman would have had any obligation to address Castro's conduct. Furthermore, Feinman testified that, while Castro had a tendency to display an "extreme personal animus" toward certain individuals, Castro's animus was "fairly uniform" with respect to males and females and applied "across the board" with respect to national origin and race. Id. at 34:2-11. Therefore, Jaconi fails to establish a prima facie case of discrimination against Feinman.

36

h.   <u>Remaining allegations</u>

In the Complaint, Jaconi alleges she was denied vacation time, checked on during court appearances, disciplined by Castro for participating in various investigations, and denied training opportunities, all of which male officers did not experience. Am. Compl. ¶ 19(g)-(m), (o)-(p). There is no evidence of record to support any of these remaining allegations. Jaconi's deposition testimony submitted as evidence of record does not refer to these remaining allegations, and the Court cannot now speculate as to their veracity. Spangler testified that on May 26, 2007, Castro ordered him to check whether Jaconi was in court as reported. Spangler Dep. 99:18-100:16. Spangler checked; Jaconi was, in fact, not in court as Castro suspected. <u>Id.</u> 100:17-25. Spangler did not testify that Castro ordered him to check on Jaconi because of her race or sex. Defendants are entitled to judgment as a matter of law and, because Jaconi failed to point to evidence that creates a genuine dispute of material fact, the Court will grant the Motion with regard to each allegation in the Complaint.[24]

---

[24]    Jaconi testified that she never heard Castro make any comments regarding her race, but that she heard Castro refer to her in his office as a "bitch" and a "dyke." Jaconi Dep. 60:9-10. Feinman testified that, while Castro did not like certain individuals, he never used this type of language. Feinman Dep. 22:9-14 ("I mean [Castro] would say things, you know, basically that he thought they did poor work or, you know, that he didn't like them, you know, without any specific reason why. I mean it

2.   Retaliation

Jaconi alleges Defendants violated her right to be
free from retaliation for opposing race and sex discrimination
in violation of Title VII and the PHRA. As discussed above, to
establish a prima facie case of unlawful retaliation under Title
VII, Jaconi must provide evidence to show (1) she engaged in
protected activity; (2) Defendants took an adverse employment
action against her; and (3) a causal connection between her
participation in the protected activity and the adverse
employment action. See, e.g., Moore, 461 F.3d at 340-41. Jaconi
fails to establish a prima facie case of unlawful retaliation.

First, the Complaint can fairly be read to assert two
instances of alleged protected activity: (1) that Jaconi

---

didn't reduce to the point of name-calling, you know, that
you're alleging."). Feinman never heard Castro refer to Jaconi
as a "bitch" or "dyke." Id. at 14:18-22. Even accepting as true
that Castro referred to Jaconi this way on a specific occasion,
it is not sufficient to prove Castro's actions taken against
Jaconi were motivated, even in part, by unlawful discrimination,
especially considering the lack of any other evidence suggesting
Castro had such motivations. See Oncale v. Sundowner Offshore
Servs., 523 U.S. 75, 80 (1998) (unanimous) ("We have never held
that workplace harassment, even harassment between men and
women, is automatically discrimination because of sex merely
because the words used have sexual content or connotations. The
critical issue, Title VII's text indicates, is whether members
of one sex are exposed to disadvantageous terms or conditions of
employment to which members of the other sex are not exposed."
(internal quotation marks removed)); Kidd v. Pennsylvania, 37 F.
App'x 588, 593 (3d Cir. 2002) (holding as a matter of law that
supervisor's calling employee "bitch" on one occasion in midst
of argument not sexual harassment).

participated in an internal investigation concerning a domestic incident between Castro and his daughter that occurred on August 13, 2005; and (2) that Jaconi reported Castro for his disparate treatment as early as March 6, 2007. Am. Compl. ¶¶ 18, 19(k), 53.

The August 13, 2005, incident has nothing to do with unlawful discrimination. Because Jaconi did not oppose unlawful discrimination or participate in a proceeding or investigation regarding unlawful discrimination, Jaconi did not engage in protected activity actionable under Title VII and the PHRA. See 42 U.S.C. § 2000e-3(a) (2006).

Moreover, there is no record support for Jaconi's alleged March 6, 2007, report to internal affairs regarding Castro's disparate treatment of her. During her deposition, Jaconi referred to an internal affairs report regarding Castro's conduct. Jaconi Dep. 91:1-25. It is not clear whether she reported Castro for engaging in unlawful discrimination. Jaconi's fleeting reference to an internal affairs report is insufficient to create a genuine dispute of material fact whether she engaged in protected activity.[25] Therefore, Jaconi did not engage in protected activity.

---

[25]      In their response, Plaintiffs assert that Defendants did not challenge Jaconi's retaliation claim. Pls.'s Resp. 30 n.12. This is incorrect. In fact, Defendants moved for summary judgment on and briefed the issue of whether Jaconi suffered

Second, even if the Court assumed Jaconi reported
alleged unlawful discrimination on March 6, 2007, Jaconi did not
suffer a materially adverse action. Jaconi testified that, after
the alleged report, some coworkers in another squad would not
talk to her and would not help her. The evidence of record
indicates that Jaconi suffered, at most, a "petty slight or
minor annoyance," not actionable retaliation or harassment. See
Burlington N., 548 U.S. at 68. Therefore, the Court will grant
the Motion as to Jaconi's retaliation claim.

C.   Claims Against City

Plaintiffs allege throughout the Complaint that the
City has a policy or custom of discrimination. Am. Compl. ¶¶ 34,
45, 56. Plaintiffs appear to allege a violation of 42 U.S.C. §
1983 and the PHRA.[26] There is no evidence of record that the City

---

unlawful retaliation. See Mem. in Supp. of Mot. for Summ J. 41-
49. Plaintiffs' oversight is consistent with the general
inattention to detail regarding the factual averments and legal
analysis at issue in this case.

[26]     Indeed, a litigant may bring a claim for a
constitutional violation against a municipality under § 1983.
See Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S.
658, 690 (1978). However, municipalities are not liable for the
acts of their employees under a respondeat superior theory. Id.
at 691. "Instead, it is when execution of a government's policy
or custom, whether made by its lawmakers or by those whose
edicts or acts may fairly be said to represent official policy,
inflicts the injury that the government as an entity is
responsible under § 1983." Id. at 695; see also Andrews v. City
of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990).

has a policy or custom of unlawful discrimination or acquiescing in unlawful discrimination. In fact, as shown above and based on the evidence of record, Plaintiffs' claims of discrimination are without record support. Plaintiffs fail to raise a genuine dispute of material fact that the City has any such policy or custom and failed to identify an appropriate policymaker responsible for an unlawful policy or custom. Therefore, the Court will grant Defendants' Motion with respect to all claims against the City relating to an alleged unlawful policy or custom of discrimination.

**VI.   JUDGMENT INDEPENDENT OF THE MOTION**

It appears based on the record before the Court that Castro would be equally entitled to summary judgment in this case. But because Plaintiffs are not on notice that the Court would consider summary judgment with respect to the claims against Castro, the Court will afford Plaintiffs, if appropriate, a reasonable time to file a memorandum raising any genuine disputes of material fact that would preclude granting summary judgment in favor of Castro. See Fed. R. Civ. P. 56(f).

**VII. CONCLUSION**

For the foregoing reasons, the Court will grant Defendants' Motion for Summary Judgment and enter judgment in

favor of the City of Philadelphia and Jack Feinman on all

claims. An appropriate order will follow.